The court is, therefore, of the opinion that it is sufficient to allege generally that the plaintiff was guilty of negligence which contributed to his injury, and that it is not necessary to make a statement of the facts relied upon to show such negligence.

The motion to make more certain and definite will, therefore, be overruled.

*Andrews & Morey* and *W. S. Harlan,* for motion.
*Shotts & Millikin,* contra.

---

### RAILWAY COMPANY NOT BOUND BY ERRONEOUS INFORMATION GIVEN BY ITS AGENT AS TO RATES.

[Common Pleas Court of Cuyahoga County.]

THE CLEVELAND STORE FIXTURE COMPANY v. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

Decided, October 3, 1903.

*Freight Rates—Published Schedules Therefor—Carrier Not Bound to Give Further Information—Not Bound by Erroneous Information Given by Its Agent—Must Collect the Schedule Rate.*

Where a common carrier has published a schedule of freight charges in accordance with the Interstate Commerce Act, it is not bound to give further information regarding rates, and if one of its agents does give information, it is a voluntary act, and no contract to ship thereby can be claimed, and if the information so given is erroneous it is the duty of the carrier to correct the error and charge the rate stipulated in its schedules.

BEACOM, J.

Plaintiff is engaged at Cleveland, Ohio, in the manufacture and sale of store fixtures, and desiring to ship certain bar fixtures to Jerome, Arizona, asked defendant by telephone for the rate per hundred pounds from the first named point to the second, and was told by an agent of the company that it was $4.11 per hundred pounds, at which rate the total charges from the first named to the second named point would be $90.81.

Plaintiff delivered said goods to defendant company, and they were carried to Jerome, Arizona, and there delivered to the consignee, but said delivery was not made until the consignee had paid $187.99 freight charges, that being $88.07 in excess of the rate that had been given by defendant to the plaintiff when inquiry

had been made by plaintiff of defendant at Cleveland, the point of shipment. The said $187.99 was the proper charge for said shipment, according to the schedule of rates of defendant company, published by it in accordance with the Interstate Commerce Act. Defendant prints and keeps for public inspection schedules showing rates and charges for the transportation of property, and it in all respects conformed to the requirements of the Interstate Commerce Act.

Plaintiff now claims that it should recover the excess of $88.07 from defendant. Defendant answers that it is its right and its duty to charge plaintiff the rate specified in its published schedule of charges, and that, having charged that and no more, judgment should be rendered for defendant.

Section 6 of the Interstate Commerce Act provides, among other things, that—

"When any common carrier shall have published its rates, it shall be unlawful for such carrier to charge and receive from any person a greater or less compensation for the transportation of property than is specified in such published schedule of rates."

This court is of opinion that this provision of the Interstate Commerce Act is binding upon defendant, and that it was not only its right, but its duty, to charge the amount that it did charge. Having published a schedule of charges, it is bound by law to collect from every shipper the rates therein specified, and neither can the railway company make a contract with any shipper for a rate different from that so published, nor is it required to give to any shipper information in regard to rates except as found in its published schedules; and if any agent of the common carrier does give information, that is a voluntary act, and no contract to ship at that rate can be claimed to have been thereby made; and if the information so given be erroneous, it is the right and the duty of the carrier to correct that error and charge the rate stipulated in its published schedules.

The above seemed to this court the correct view before examining the authorities, and it is sustained by the only authorities cited to the court.

In the case of The Gulf, Colorado & Sante Fe Ry. Co. v. Hefley, 158 U. S., 98, it appeared that a statute of Texas made it unlawful for a railroad company in that state to charge a greater sum

for transporting freight than was specified in the bill of lading. The Supreme Court of the United States held that this provision, when it arose in an interstate commerce matter, was in conflict with the provisions of the Interstate Commerce Act, which provided that it should be unlawful for a carrier to charge or collect a greater or less compensation for the transportation of property than that specified in the published schedule of rates provided for by the act, and that, being in conflict with the statute of the United States—the supreme law of the land—the state statute, the statute of Texas, must give way. The judicial principles involved in that case were the same as in the present case, and the facts were more favorable to plaintiff than are the facts in this case; for, in that case, there was not only an attempt to make a contract for a rate lower than that provided by the Interstate Commerce Act, but there was a state statute imposing a penalty for an attempt to violate that contract.

In the case of *Southern Ry. Co.* v. *Harrison,* 24 S. Rep., 552, decided by the Supreme Court of Alabama, it was held that—

"Under the Interstate Commerce Act requiring interstate carriers to post their tariffs, and prohibiting them from charging rates other than those published, a contract for the transportation of an interstate shipment at less than the published rate provided by the Interstate Commerce Commission is invalid; and the carrier may collect the rate as published, regardless of that fixed by the bill of lading."

In the case of *San Antonio & A. P. R. R. Co.* v. *Clements,* 49 S. W. Rep., 913, decided by the Court of Civil Appeals of Texas, it was held that—

"The agent of the railroad company, at the destination of an interstate shipment by connecting carriers, may and must collect from the shipper the excess of the tariff rates fixed by the Interstate Commerce Commission over the rate agreed on with the first carrier."

No case contra was cited. In the last two cases the facts were, so far as the legal principles involved are concerned, the same as in this present case.

Judgment for defendant.

*Weed & Miller,* for plaintiff.

*E. A. Foote,* for defendant.